UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 17-cv-81181-BLOOM/Hopkins

KATHLEEN MCNAMARA,

    Plaintiff,

vs.

FLORIDA POWER & LIGHT COMPANY, and
FPL ENERGY SERVICES, INC.,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Complaint and/or Motion for More Definite Statement, ECF No. [8] ("Motion"). The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

I.     BACKGROUND

Plaintiff, Kathleen McNamara ("Plaintiff"), sued Defendants Florida Power & Light Company ("FPL") and FPL Energy Services, Inc. ("FPLES") (collectively referred to as "Defendants") alleging claims for unlawful age discrimination under the Age Discrimination in Employment Act ("ADEA"), unlawful age discrimination under the Florida Civil Rights Act of 1992 ("FCRA"), unlawful gender discrimination under Title VII, unlawful gender discrimination under the FCRA, hostile work environment based on sex and age discrimination, and intentional infliction of emotional distress ("IIED"). *See* ECF No. [1]. These claims arise from alleged instances of discrimination commencing in September of 2014 after Plaintiff's manager, Troy

Rice ("Mr. Rice"), promoted her to Senior Manager of Marketing & Digital Media. According to the Complaint, after Plaintiff received this promotion, she was subjected to humiliating and embarrassing comments made by her co-workers, which Mr. Rice did not rectify, and she was overruled on a hiring decision based on Mr. Rice's belief that the candidate she selected would not respect her. *Id.* Also during her employment, Plaintiff claims Mr. Rice acted disrespectfully toward her by interrupting her when she spoke, telling her that no one on the team liked her, verbally reprimanding her for interrupting another co-worker during a meeting, excluding her from meetings and other company functions, refusing to acknowledge any of her successes, refusing to provide her feedback, making dismissive comments, and having an overall condescending attitude toward her. *Id.* Eventually, on February 20, 2017, Mr. Rice called a meeting with Plaintiff and Human Resources and terminated Plaintiff because "there have been some misses in marketing." *Id.* Thereafter, Plaintiff's position was filled with Mr. Rice's close friend - a male employee who is approximately 37 to 40 years old. *Id.*

In the Motion, Defendants seek to dismiss the entirety of the Complaint as a "shot-gun" pleading. *See* ECF No. [8]. In addition, Defendants seek dismissal of Plaintiff's claim for a hostile work environment, arguing that it fails to identify any hostility arising from Plaintiff's membership in a protected class, and Plaintiff's claim for IIED, arguing that the alleged conduct does not rise to the level of outrageousness required for this tort. *Id.* Finally, Defendants seek to dismiss FPL from the lawsuit and seek dismissal of Plaintiff's punitive damages claim. *Id.* Plaintiff filed a timely Response in opposition and Defendants filed a timely Reply. *See* ECF Nos. [10] and [15]. The Motion is now ripe for review.

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the

claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## III. DISCUSSION

### a. The Complaint is a Shot-Gun Pleading

Defendants first seek to dismiss the Complaint or, at a minimum, obtain a more definite statement because the Complaint constitutes an impermissible shot-gun pleading. The Court agrees. The Eleventh Circuit has identified four categories of shot-gun pleadings as follows:

> The most common type [of shot-gun pleadings]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

Plaintiff's Complaint is an example of the quintessential "shot-gun" pleading in that each count was reincorporated into every subsequent count, rendering the Complaint extremely difficult to comprehend. *Id.*; s*ee also Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 205 F.3d 1293, 1295 (11th Cir. 2002) (defining a shot-gun complaint as containing

"several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions"). Despite the obviousness of the shot-gun pleading – one characterized by the Eleventh Circuit in *Weiland* as a "mortal sin" – Plaintiff argues that the "Complaint states a plausible claim for relief, in a manner that is clear and concise." ECF No. [10] at 3. Far from a model of clarity and conciseness, the claims pled in the Complaint are an amalgamation of multiple claims. Although Count 1 properly incorporates by reference all general allegations in paragraphs 1 through 54, each subsequent count incorporates by reference all preceding allegations. This means that Count 2 incorporates all allegations in paragraphs 1 through 60, Count 3 incorporates paragraphs 1 through 66, Count 4 incorporates paragraphs 1 through 72, Count 5 incorporates paragraphs 1 through 78, and Count 6 incorporates paragraphs 1 through 84. By successively incorporating all preceding allegations, Plaintiff has incorporated allegations pertaining to age discrimination into her claims for gender discrimination. In Count 6 for IIED, Plaintiff has incorporated all claims relating to age discrimination, gender discrimination, and a hostile work environment. This pleading practice violates Rule 8 of the Federal Rules of Civil Procedure and requires dismissal. *See Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1336 (S.D. Fla. 2010) ("A shotgun pleading is in no sense a short and plain statement of the claim as required by Rule 8.").

With that said, this is Plaintiff's first attempt at pleading her claims. Although Plaintiff did not request leave to amend, the Court will nonetheless allow Plaintiff the opportunity to amend and cure these pleading deficiencies. However, Plaintiff is cautioned against filing another shot-gun pleading in this case.

**b. Count 5 Fails to State a Claim for a Hostile Work Environment**

In addition to its shot-gun pleading argument, Defendants seek dismissal on other grounds. Starting with Count 5, Defendants argue that Plaintiff fails to state a claim for a hostile work environment because she does not allege membership in a protected class and because she does not allege that the harassment was based upon such protected characteristics. *See* ECF No. [8] at 4. The parties are in agreement that a claim for a hostile work environment requires Plaintiff to establish the following: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment, (3) that the harassment must have been based on a protected characteristic; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000). In essence, Defendants challenge the sufficiency of Plaintiff's allegations as to the first and third element.

As to the first element, the Court notes that Plaintiff has technically pled both her gender (female) and her age (45) as she incorporated paragraphs 56, 62, 68 and 74 into Count 5. With that said, the Court has already determined that Plaintiff's Complaint is an improper shot-gun pleading subject to dismissal. In the Amended Complaint, Plaintiff is instructed to incorporate into Count 5 only those facts relevant to a hostile work environment claim or to specifically plead relevant facts, such as her age and gender, within Count 5.

As to the third element of a claim for hostile work environment, the Court agrees that Plaintiff failed to properly satisfy this requirement. "It is a bedrock principle that not all objectionable conduct or language amounts to discrimination under Title VII." *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016), *cert. denied sub nom. Trask v.*

*Shulkin*, 137 S. Ct. 1133, 197 L. Ed. 2d 176 (2017) (citing *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1297 (11th Cir. 2012)). "[O]nly conduct that is *based on* a protected category . . . may be considered in a hostile work environment analysis." *Id.* (emphasis in original). Allegations based on "[i]nnocuous statements or conduct, or boorish ones that do not relate to the [age or gender] of the actor or of the offended party (the plaintiff), are not counted." *Id.* (quoting *Jones,* 683 F.3d at 1297) (alterations in original). In *Trask*, the plaintiff alleged multiple incidents of management's hostility, but such comments did not relate to the plaintiff's protected characteristics. *Id.* This was fatal to her claim because there was no evidence that a discriminatory animus regarding her age or gender motivated the hostility. *Id.*

Here, the allegations in the Complaint certainly allege instances of hostility toward Plaintiff – a fact that Defendant does not contest – but there is no indication that such hostility is related to either her age or gender. In her Response, Plaintiff directs the Court to allegations documenting when a male coworker, Joe Nestor, allegedly tapped her on the shoulder and referred to this action as "cow tipping." *See* ECF No. [10] at 5. Certainly, such an allegation may be seen as a hostile act toward Plaintiff, but there is nothing about "cow tipping" that links it to Plaintiff's age or gender. The same is true when Mr. Nestor allegedly called Plaintiff a "tyrant." In addition, Plaintiff argues that she has alleged instances where Mr. Rice did not consider her hiring choice because he believed the candidate "would not respect [her]" and instances where other employees bypassed her authority and went directly above her. *Id.* at 6. However, there is no allegation tying either of these actions to age or gender. For example, there is no allegation that Mr. Rice believed that Plaintiff's preferred candidate "would not respect [her]" *because she was a woman or was above a certain age*. Similarly, Plaintiff argues that she included allegations that her male coworkers interrupted and ignored her when she spoke during

7

team meetings and that Mr. Rice aggressively berated her during another meeting. However, none of these actions are linked to gender or age. Although Plaintiff's Response argues that none of her male coworkers or younger coworkers was subject to this type of abuse, Plaintiff does not cite to any allegations in the Complaint to support this argument. A review of the Complaint likewise does not reveal any such allegations. The Court, therefore, finds that Count 5 fails to state a claim to the extent there are no allegations linking the alleged hostility to Plaintiff's age or gender. Nonetheless, Plaintiff will be given leave to amend to cure this deficiency in the Amended Complaint.

### c. Count 6 Fails to State a Claim for IIED

Defendants also move to dismiss Plaintiff's claim for IIED for failure to state a claim. Under Florida law, liability for IIED can be imposed only where:

> the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Henderson v. Hovnanian Enterprises, Inc.*, 884 F. Supp. 499, 503–04 (S.D. Fla. 1995) (quoting *Metropolitan Life Ins. Co. v. McCarson,* 467 So. 2d 277, 278-79 (Fla. 1985)). In order to state an IIED claim, a plaintiff must also demonstrate that the outrageous conduct caused severe emotional distress "of such intensity or duration that no ordinary person should be expected to endure it." *Id.* (quoting *In re Standard Jury Instructions—Civil Cases No. 94–1,* 645 So. 2d 999, 1000 (Fla. 1994) (per curiam)). In Florida, "the issue of whether or not the activities of the defendant rise to the level of being extreme and outrageous so as to permit a claim for intentional infliction of emotional distress is a legal question . . . for the court to decide as a matter of law." *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1357–58 (M.D. Fla. 1999)

(quoting *Vance v. Southern Bell Telephone Co.,* 983 F.2d 1573, 1575 n. 7 (11th Cir. 1993) and *Baker v. Florida Nat'l Bank,* 559 So. 2d 284, 287 (Fla. 4th DCA 1990)).

Applying these standards to this case, the Court begins by noting that "Florida law imposes a very high standard on a plaintiff alleging intentional infliction of emotional distress in the employment realm." *Id.* (citing *Golden v. Complete Holdings, Inc.,* 818 F. Supp. 1495, 1499 (M.D. Fla. 1993); *Hayes v. Liberty Nat'l Life Ins. Co.,* No. 94–425–CIV–J–10, 1995 WL 500896, at *3–4 (M.D. Fla. 1995); *Blount v. Sterling Healthcare Group,* 934 F. Supp. 1365, 1370–71 (S.D. Fla. 1996)). Although Florida appears to have a "strong disfavor" for such claims, it has not created an absolute bar to IIED claims related to actions in the workplace. *Id.* However, the distinction between permissible and non-permissible IIED claims in the area of employment law appears to be the existence of a significant physical component that forms part of the harassment. *See Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1558–60 (S.D. Fla. 1996). "It is the element of offensive, non-negligible physical contact that, when coupled with persistent verbal abuse and threats of retaliation, can under some facts and circumstances constitute conduct of sufficient outrageousness to support a claim for intentional infliction of emotional distress." *Id.* This is consistent with the notion that one cannot be liable for IIED based upon "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *Id.* (citing *Metropolitan Life,* 467 So. 2d at 279).

In support of her IIED claim, Plaintiff directs the Court to only two opinions: *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327 (M.D. Fla. 1999) and *Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339 (11th Cir. 2005). Curiously, in *Scelta*, the district court dismissed the claim for IIED finding that the complaint "failed to establish the extreme and outrageous conduct necessary" even though the plaintiff alleged she was subject to a sexually

hostile work environment that included several instances of verbal harassment coupled with one instance of an offensive touching. 57 F. Supp. 2d at 1358. In *Koutsoudaris*, the Eleventh Circuit affirmed the dismissal of the IIED claim because the sexual comments made by airline employees, while distasteful, were insufficient under Florida law. 427 F.3d at 1345. Neither case supports Plaintiff's position.

Here, the sole basis of Plaintiff's claim is frequent ridicule by her male coworkers coupled with hostility and public humiliation by her manager. *See* ECF No. [10] at 7. While these alleged actions may have been unpleasant, they do not rise to the level of outrageousness necessary to state a claim for IIED. The Complaint is devoid of any allegations of non-negligible physical conduct. To the contrary, all of the allegations are consistent with insults and indignities – neither of which is sufficient. Taking all allegations in the Complaint as true, the Court finds that as a matter of law, Plaintiff cannot state claim for IIED. For that reason, Count 6 is dismissed with prejudice.

### d. The Complaint Sufficiently Alleges Single Employer Status

FPL, individually, seeks outright dismissal, arguing the Complaint does not allege any actions on the part of FPL with respect to Plaintiff's employment or any alleged wrongdoing on its part. *See* ECF No. [8] at 6. In response, Plaintiff argues that she is asserting an alter-ego theory of liability between FPL as the parent corporation and FPLES as the subsidiary or a single employer theory of liability. *See* ECF No. [10] at 7-9. At a minimum, the Court finds that Plaintiff has sufficiently alleged a single employer theory, requiring that FPL's request for dismissal be denied.

The term "employer" under Title VII is afforded a liberal construction. *See Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341–42 (11th Cir.), *judgment entered*, 169 F.3d 1322

(11th Cir. 1999). When liberally interpreting the word "employer," courts "sometimes look beyond the nominal independence of an entity and ask whether two or more ostensibly separate entities should be treated as a single, integrated enterprise when determining whether a plaintiff's 'employer' comes within the coverage of Title VII." *Id.* One such circumstance arises when "two ostensibly separate entities are 'highly integrated with respect to ownership and operations'" known as the "single employer" or "integrated enterprise" test. *Id.* To determine whether two entities should be counted as a single employer, the Eleventh Circuit applies the standard used in NLRA cases by the National Labor Relations Board. *Id.* Under this test, courts look for "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.*

Based upon its review of the Complaint, the Court finds that Plaintiff has sufficiently alleged the existence of a single employer. Paragraphs 3 and 4 identify the companies as related entities with FPLES as the subsidiary of FPL. *See* ECF No. [1] at ¶¶ 3 and 4. In addition, Plaintiff alleges that "Defendants operate as a single employer because they maintain the same corporate headquarters, share the same management, share the same human resource department, have the same shareholders, and share the same email communication system." *Id.* Although Defendant's Reply disputes that "the facts alleged by Plaintiff as to a single employer relationship will bear out further proof, and that Plaintiff will not be able to show the elements necessary to establish legal liability," that is a question for another day. At this stage of the proceedings, the Court must accept all of the allegations as true. As such, Plaintiff has sufficiently alleged the existence of a single-employer relationship.

### e. Punitive Damages

Finally, Defendants ask the Court to dismiss the claims for punitive damages under the FCRA, Title VII, the ADEA, and the state-law claim for IIED. Although Defendants do not specifically raise this issue, the Court takes notice that Plaintiff's pleading has generally stated claims for relief in the form of compensatory damages, punitive damages, attorney's fees and costs, pre-judgment interest, and post-judgment interest in a section entitled "Demand for Relief." *See* ECF No. [1] at 18. Notably, the individual counts make no mention of damages and this "Demand for Relief" section does not identify which form of damages applies to which claim. *Id.* The location of the "Demand for Relief" section at the end of the Complaint leaves one to speculate as to whether it is intended to apply to all counts. *Id.* This is yet another example of a shot-gun pleading approach.

"The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or *claim for relief*." *Weiland*, 792 F.3d at 1322-23 (emphasis added). "A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *See Weinstein v. City of N. Bay Vill.*, 977 F. Supp. 2d 1271, 1285 (S.D. Fla. 2013) (citing *Lampkin–Asam v. Volusia Cnty. Sch. Bd.,* 261 F. App'x. 274, 277 (11th Cir. 2008)). By pleading damages in this way, neither Defendants nor this Court is able to discern what form of damages Plaintiff seeks in each count. Instead, Defendants and the Court are left to guess as to whether Plaintiff is seeking all forms of damages under all six counts or only certain damages under certain counts. In compliance with Rule 8, Plaintiff is instructed to set forth the specific form of damages sought under each individual count in the Amended Complaint.

Reaching the question of punitive damages, Defendants first argue that Plaintiff has impermissibly pled punitive damages for her state-law claims in Counts 2, 4, and 6 without obtaining prior leave of Court. In support of this argument, Defendants cite to Florida Statute § 768.72 and *Simeon, Inc. v. Cox*, 671 So. 2d 158 (Fla. 1996). Plaintiff's Response does not address this argument. Nonetheless, the Court finds that such an argument fails. This is because the Eleventh Circuit Court of Appeals has determined that "the pleading requirements of Florida Statutes § 768.72 are inapplicable in federal diversity cases." *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1299 (11th Cir. 1999), *opinion vacated in part on reh'g*, 204 F.3d 1069 (11th Cir. 2000); *see also Valderrama v. Rousseau*, No. 11-24637-CV, 2012 WL 12925364, at *2 (S.D. Fla. Dec. 12, 2012), *report and recommendation adopted*, No. 11-CIV-24637, 2013 WL 12177327 (S.D. Fla. Jan. 31, 2013) ("In 2000, the Eleventh Circuit reaffirmed that § 768.72 conflicts with, and must yield to, the 'short and plain statement' rule contained in Fed.R.Civ.P. 8, as a result a Plaintiff in federal court, even on diversity grounds, need not obtain leave of court before pleading a request for punitive damages."). Thus, Plaintiff is not required to make a showing or seek leave of Court before pleading punitive damages under her state-law claims.

With regard to punitive damages under Title VII, Defendants argue that Plaintiff failed to allege any facts establishing that they acted with actual malice, recklessness, gross negligence, or indifference to her federally protected rights. *See* ECF No. [8] at 7. The Court agrees and also finds that Plaintiff did not plead any such facts in support of her punitive damage claims under state law. "A plaintiff seeking punitive damages against an employer for job discrimination faces daunting obstacles under the law established by decisions of the Supreme Court and th[e Eleventh Circuit]" as "[p]unitive damages are disfavored by the law and are awarded solely to punish defendants and deter future wrongdoing." *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 900–

01 (11th Cir. 2011). Punitive damages are available when an employee acts "with actual malice or reckless indifference to his federally protected rights." *Id.* "Malice means an intent to harm and recklessness means serious disregard for the consequences of one's actions." *Id.* (quoting *E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000)). "Malice or reckless indifference is established by a showing that the employer discriminated in the face of the knowledge that its actions would violate federal law." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1280 (11th Cir. 2008) (quoting *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1280 (11th Cir. 2002)). Examples of employer conduct supporting punitive damages are "(1) a pattern of discrimination, (2) spite or malevolence, or (3) a blatant disregard for civil obligations." *Id.* (quoting *Dudley v. Wal–Mart Stores, Inc.,* 166 F.3d 1317, 1322–23 (11th Cir. 1999)).

Defendants' argument here is well taken. The Complaint does not plead any facts demonstrating any malice or reckless indifference on the part of Defendants to warrant punitive damages. In fact, the words "malice" and "reckless indifference" are nowhere to be found in the Complaint. As currently pled, the Complaint falls short of adequately pleading punitive damages and is subject to dismissal. However, the Court will allow Plaintiff to properly allege a claim for punitive damages under Counts 2, 3, 4, and 5 in the Amended Complaint if she so chooses.[1] However, Plaintiff must allege specific facts demonstrating conduct rising to the level of malice or reckless indifference for each count seeking punitive damages.

To the extent that Plaintiff also intends to seek punitive damages under the ADEA, such a claim is stricken. "With respect to the ADEA, no punitive damages or compensatory damages for pain and suffering are permissible under the ADEA." *Abrams-Jackson v. Avossa*, No. 16-81624-CIV, 2017 WL 1153895, at *8 (S.D. Fla. Mar. 28, 2017) (striking claim for punitive damages under the ADEA); *Smith v. Vestavia Hills Bd. of Educ.*, 218 F. Supp. 3d 1285, 1291

---

[1] As explained above, Count 6 is dismissed with prejudice.

(N.D. Ala. 2016) (same). In her Response, Plaintiff does not direct the Court to any statutory authority or case law allowing for the recovery of punitive damages under the ADEA. Finding that the ADEA does not allow such damages, these are stricken from the Complaint without leave to re-plead.

## IV. CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

a. Defendants' Motion to Dismiss Complaint and/or Motion for More Definite Statement, **ECF No. [8]**, is **GRANTED**. Except as otherwise ordered below, the Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall file an Amended Complaint that is consistent with this Order by **February 7, 2018**.

b. Count 6 for Intentional Infliction of Emotional Distress is **DISMISSED WITH PREJUDICE**.

c. Plaintiff's claim for punitive damages under the ADEA is **STRICKEN**.

**DONE AND ORDERED** in Miami, Florida, this 26th day of January, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record